

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

7-30-2008

# USA v. Mitchell

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-2330

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"USA v. Mitchell" (2008). *2008 Decisions.* Paper 776.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/776

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

IN THE UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 07-2330
_____

UNITED STATES OF AMERICA

v.

MERV MITCHELL
a/k/a Robert Wesley

MERV MITCHELL,
Appellant.

_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. No. 00-cr-00198)
District Judge: Honorable Eduardo C. Robreno
_____

Submitted Under Third Circuit LAR 34.1(a)
July 22, 2008

Before: McKEE, FUENTES, and JORDAN, *Circuit Judges*

_____

Filed: July 30, 2008
_____

OPINION OF THE COURT
_____

JORDAN, *Circuit Judge*.

On June 27, 2000, Merv Mitchell ("Mitchell") pled guilty to possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1), and was sentenced to fifty-two months of imprisonment and three years of supervised release. After completing his prison sentence, Mitchell violated his supervised release by fraudulently cashing bad checks in New Jersey and Pennsylvania. As a result of these actions, on April 19, 2007, Mitchell's supervised release was revoked and he was sentenced to an additional twelve months imprisonment. On appeal, Mitchell asserts that the District Court imposed an unreasonably long sentence for his violation of supervised release. For the following reasons, we will affirm.

## I. Factual and Procedural Background

On May 20, 2004, Mitchell began serving the supervised release portion of his sentence for unlawful possession of a firearm. During the course of his supervised release, Mitchell was charged with cashing a bad check, and failing to pay the fine associated with that offense in New Jersey, and with fraudulently cashing eight checks in Pennsylvania. The incidents that gave rise to those charges took place in September of 2005.

Initially, Mitchell's probation officer was only aware of Mitchell's New Jersey charge. Upon learning of that charge, the Probation Office filed a petition to modify Mitchell's supervised release. At a February 2006 hearing, Mitchell admitted that he had

2

cashed the bad check and failed to pay the fine associated with that offense. As a result, the terms of Mitchell's supervised release were modified to require him to serve six months at a community halfway house.

Subsequently, Mitchell's probation officer learned of outstanding check fraud charges that Mitchell faced in Pennsylvania. Mitchell had, between September 13, 2005 and September 14, 2005, fraudulently cashed eight checks that ranged in value from $939.77 to $988.11 at four different Commerce Bank branches in Philadelphia. Between September 16, 2005 and September 19, 2005, all of Mitchell's checks were returned as counterfeit or drawn against closed accounts. As a result of Mitchell's fraudulent transactions, Commerce Bank lost a total of $7,834.51.

When confronted about those bad checks, Mitchell acknowledged that he had committed the criminal acts, saying that he was laid off and needed the money to pay his bills. Accordingly, the Probation Office moved to revoke Mitchell's supervised release, alleging that, under the U.S. Sentencing Guidelines ("Guidelines"), Mitchell's behavior constituted a "Grade B" violation of supervised release. Mitchell did not contest the charges at his revocation hearing.

Mitchell's probation officer testified at the hearing that, other than the above mentioned criminal activities, Mitchell had complied with the conditions of his supervised release. Consequently, the government recommended a custodial sentence

towards the bottom end of the Guidelines range for a "Grade B" violation.[1]  In turn,

Mitchell argued that he should be sentenced below the Guidelines range because he had

changed his life for the better since his initial imprisonment and because his criminal

activity had occurred over a brief two-day period after he lost his employment.

Nevertheless, the District Court found that the Guidelines range was appropriate and

sentenced Mitchell to the minimum recommended period of twelve months

imprisonment.

## II.    Discussion[2]

We review for reasonableness a sentence imposed following a revocation of

supervised release.  *United States v. Bungar*, 478 F.3d 540, 542 (3d Cir. 2007).

Reasonableness requires that the sentencing court give "meaningful consideration" to the

factors set forth in 18 U.S.C. § 3553(a), and exercise sound discretion in applying those

factors to the case.[3]  *Bungar*, 478 F.3d at 543.  A sentencing court need not make findings

---

[1]The Guidelines suggests a range from twelve to eighteen months imprisonment for "Grade B" violations of supervised release.  U.S. Sentencing Guidelines Manual § 7B1.4(a).

[2]The District Court had subject matter jurisdiction pursuant to 18 U.S.C. § 3231.  We have appellate jurisdiction pursuant to both 28 U.S.C. § 1291 and 18 U.S.C. § 3742(a).

[3]Section 3553(a) states, in pertinent part, that a court is to consider the following factors in imposing a sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed (A) to reflect the seriousness of the offense,

as to each factor to satisfy this standard; it is met so long as the findings establish that "[the court] has considered the parties' arguments and has a reasoned basis for exercising ... legal decision-making authority." *Rita v. United States*, 127 S. Ct. 2456, 2468 (2007). The burden of proving an unreasonable sentence rests with the challenging party, and our review is highly deferential to the sentencing judge. *Bungar*, 478 F.3d at 543.

Mitchell argues that the District Court erred by imposing the twelve month sentence because it gave undue weight to the Guidelines, and failed to adequately account for his history and characteristics. Mitchell asserts that, as a result of the District Court's error, his sentence is greater than necessary to achieve the goals of sentencing. Mitchell believes that his sentence should be shorter for three reasons. First, he argues that the

---

to promote respect for the law, and to provide just punishment for the offense; (B) to afford adequate deterrence to criminal conduct; (C) to protect the public from further crimes of the defendant; and (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;

(3) the kinds of sentences available;

(4) the kinds of sentence and the sentencing range established for ... the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines ...;

(5) any pertinent policy statement ... issued by the sentencing commission ...;

(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and

(7) the need to provide restitution to any victims of the offense.

*Bungar*, 478 F.3d at 543 (paraphrasing factors).

conduct for which he received his sentence occurred prior to the imposition of the community confinement for the fraud he committed in New Jersey, thereby suggesting little about the efficacy of that punishment on his rehabilitation. In support of this argument, he points to the fact that he was generally compliant with the terms of his supervised release and exhibited signs of rehabilitation after receiving his community confinement sentence. Second, he claims that his sentence is unreasonable because his crime was minor and was necessitated by his having been laid off. Third, he argues that a lengthy period of incarceration is unduly detrimental based on the extent to which he has been rehabilitated.

None of Mitchell's contentions suggests–directly or otherwise–that the District Court failed to give meaningful consideration to each of the factors in 18 U.S.C. § 3553(a). Rather, Mitchell argues that the sentence is unreasonable because the District Court did not afford enough weight to his rehabilitative efforts. That argument fails, however, because a district court's "failure to give mitigating factors the weight a defendant contends they deserve [does not render] a sentence unreasonable." *Bungar*, 478 F.3d at 546. Furthermore, the District Court did acknowledge Mitchell's unemployment at the time his crimes were committed, successful efforts to maintain a drug-free lifestyle, and his activities as a community leader. Although the record does reflect that Mitchell made some progress in the course of his supervised release, his crime cannot go unpunished, or inadequately punished, for that reason.

The relevant factors suggest, in fact, that the sentence imposed was entirely appropriate under the circumstances. In *Bungar*, we emphasized that a "[s]entence is imposed for violations of supervised release primarily to sanction the defendant's breach of trust while taking into account, to a limited degree, the seriousness of the underlying violation and the criminal history of the violator." 478 F.3d at 544 (internal quotations omitted). Mitchell's crime was a calculated one which cost his victim almost $8,000.00. The severity of the crimes he committed in Pennsylvania is in no way diminished by the fact that the crimes occurred in close temporal proximity to the crimes in New Jersey. Although he knew that his probation officer and the Court were unaware of his crimes in Pennsylvania when sentencing him for his crimes in New Jersey, Mitchell failed to disclose those facts voluntarily. Therefore, despite Mitchell's compliance with the terms of his supervised confinement prior to and after September 2005, these offenses – individually and collectively – show that, at best, one might view Mitchell's rehabilitation as a work in progress.

In this context, it is clear that the District Court had a "reasoned basis for exercising ... legal decision-making authority" in sentencing Mitchell to the minimum sentence recommended by the Guidelines. *Rita*, 127 S. Ct. at 2468. When the sentencing judge acts within those confines, it is not our role to second guess his or her judgment. Here, the sentence imposed by the District Court is consistent with the §3553(a) factors, and, therefore, is reasonable.

**III.    Conclusion**

Because Mitchell's sentence is reasonable, we will affirm the judgment and sentence imposed by the District Court.